104 So.2d 204 (1958)
ARKANSAS LOUISIANA GAS COMPANY, Plaintiff-Appellant,
v.
LOUISIANA DEPARTMENT OF HIGHWAYS, Defendant-Appellee.
No. 8835.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1958.
Rehearing Denied July 11, 1958.
Writ of Certiorari Denied October 10, 1958.
*205 Blanchard, Goldstein, Walker & O'Quin, Shreveport, for appellant.
D. Ross Banister, Baton Rouge, for appellee.
HARDY, Judge.
This suit was instituted by plaintiff for recovery of expenditures resulting from the relocation of a pipeline in accordance with the regulations and requirements of defendant in connection with the construction of a new highway. From judgment rejecting plaintiff's demands it prosecutes this appeal.
The facts are undisputed and are detailed in a stipulation of counsel, from which we recapitulate the following:
Plaintiff, a Delaware corporation authorized to do business in Louisiana, engaged in the production, purchase and distribution of natural gas, both intrastate and interstate, *206 in the year 1935 constructed a ten-inch gas pipeline, a portion of which is located in Bossier Parish, Louisiana. The line was laid on right-of-ways purchased from private property owners, and, since its construction, it has continued to be owned and operated by plaintiff as a part of its general gas pipeline system. At a point in the SE¼ of Section 7, Township 18 North, Range 11 West, Bossier Parish, Louisiana, plaintiff's pipeline crosses Louisiana State Highway 4, which is an integral part of U. S. Highway 80. Permission for the laying of plaintiff's pipeline in the NE¼ of SE¼ of Sec. 7, Twp. 18 N., R. 11 W., Bossier Parish, under U. S. Highway 80, was given by authority of a permit from Louisiana Highway Commission dated April 19, 1935, which stipulated that such permit was granted under the following conditions:
"Your 10" line is to be encased in pipe of larger size, and jacked under the highway on Route 80, in order not to disturb the surface of the road. * * All pipe to be placed at a depth of not less than 18 inches below the bottom of the present ditch line."
By deed dated April 20, 1935, W. M. Ledbetter, as owner of that portion of the SE¼ of Section 7 immediately north of and adjacent to the right-of-way of Highway 80, as then located and constituted, granted to plaintiff a servitude across the said property for the construction, maintenance and operation of plaintiff's pipeline. The property which is involved in this suit now constitutes a portion of what is known as Lot 1, Victory Acres Subdivision, ownership of which became vested in Paul E. Haynes, successor in title of W. M. Ledbetter.
By deed dated December 15, 1954, Paul E. Haynes conveyed to the defendant, Louisiana Department of Highways, a servitude for the construction and maintenance of Highway 80 over that portion of Lot 1 of Victory Acres Subdivision which lay immediately north of the previously existing highway right-of-way, which conveyance recited a consideration of $15,268.
The above property was acquired by defendant in connection with plans prepared and adopted for the construction of a paved highway intended as an addition to or enlargement of Highway 80 in order to provide a four-lane highway.
In October, 1955, the defendant undertook the grading of the newly acquired right-of-way preparatory to the construction of the paved highway thereupon, and, in connection with this work, ordered plaintiff to lower and encase its pipeline in the area which would be crossed and overlaid by the new highway. Plaintiff at first refused to comply with this demand, but, after negotiations and upon agreement and assurance by authorized officials of defendant that its rights to assert legal claim for reimbursement for the cost thereof would not be in anywise prejudiced, thereupon undertook and performed the required changes in accordance with regulations prescribed by defendant. This operation necessitated an expenditure by plaintiff in the principal sum of $1,535.09, for which it claims reimbursement in this action.
It is pertintent to note that plaintiff's compliance with defendant's regulations necessitated a relocation and encasement of its line for a distance of 100 feet, of which distance 15 feet lay within the confines of the original right-of-way of Highway 80, and 85 feet extended from the north line of said original right-of-way under and across the new highway construction upon the right-of-way acquired by defendant in 1954. The significance of this observation lies in the fact that in this suit plaintiff makes no claim for the cost of complying with the defendant's regulations with respect to that portion of its pipeline lying (for a distance of 15 feet) within the limits of the old right-of-way, and confines its claim to the right of reimbursement for the expenses attendant upon relocation and encasement of its pipeline (for a distance of 85 feet) within the new right of way.
Plaintiff predicates its asserted right of recovery of the amount here involved *207 upon the contention that its right-of-way or servitude constitutes property which, in effect, has been appropriated for a public purpose and for which appropriation it is entitled to be compensated under constitutional provisions, both State and Federal.
The principle that a right-of-way, whether denominated as easement or servitude, is property and that damage to its free use by the owners thereof amounts to a taking of property, is too well established to admit of question. The right of servitude as a form of incorporeal property is specifically defined by Article 460 of the LSA-Civil Code. The taking of or the interference with the use of an easement or servitude entitles the owner to compensation; Panhandle Eastern Pipe Line Co. v. State Highway Commission of Kansas, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090; Town of Eunice v. Louisiana Western Railway Co., 135 La. 882, 66 So. 257; City of Shreveport v. Texas & Pacific Railway Co., 182 La. 36, 161 So. 12; United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787; cf. 29 C.J.S. verbo Eminent Domain § 105; 18 Amer.Jur. verbo "Eminent Domain", Section 156.
Equally obvious and conclusive are the constitutional prohibitions against the taking of property without payment of compensation embodied in Article 1, Section 2 of the LSA-Constitution of 1921, and the Fourteenth Amendment to the Constitution of the United States.
The right of defendant highway department to cause the expropriation of a pipeline for highway purposes is not called into question. Specific authority for such action, both constitutional and statutory, is provided in Section 19 of Article 6 of the Louisiana Constitution of 1921, in LSA-Revised Statutes 19:51 et seq., and 48:441 et seq.
It follows, from the effect of the above established principles, that plaintiff has been deprived of property without compensation.
By way of defense to plaintiff's claims defendant urges that its actions in the instant case have been taken under the broad authority of the exercise of the police power of the State and cites as authority, inter alia, the cases of New Orleans Gaslight Co. v. Hart, 40 La.Ann. 474, 4 So. 215; New Orleans Gas-Light Co. v. Drainage Commission, 111 La. 838, 35 So. 929; 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831; and City of Shreveport v. Kansas City, Southern & G. Ry. Co., 167 La. 771, 120 So. 290, 62 A.L.R. 1512.
With respect to this contention we first observe that we do not subscribe to the argument that defendant's action in this case involves the exercise of the police power. Concededly, there has never been, and likely there will never be, any authoritatively exact, definite and detailed interpretation of the phrase "police power." However, the extent of this power and the drastic effects of its application clearly indicate the restriction of its employment to matters of grave and immediate public concern. This very observation was made by the court in the early case of New Orleans Gaslight Co. v. Hart, cited supra [40 La.Ann. 474, 4 So. 217], in the following words:
"Of that power, it may well be said that it is known when and where it begins, but not when and where it terminates. It is a power in the exercise of which a man's property may be taken from him, where his liberty may be shackled, and his person exposed to destruction, in cases of great public emergency." (Emphasis supplied.)
Implicit in every judicial comment upon the police power is the principle that its use and exercise must be carefully and zealously guarded in the interest of preserving the rights and liberties of individuals who may not be subjected to the burdens of its improper use under the guise of the protection of the people as a whole. We would accord more merit and greater consideration to defendant's contention on this *208 point if it appeared that its regulatory requirements in the instant case could have been effected only by and through the exercise of the police power. That this is not a justified conclusion is obvious from the facts. Nor do the authorities above noted support such a conclusion. The removal of abandoned, unused and useless lamp posts in the interest of public safety, as in the Hart case, the relocation of pipes and conduits in order to permit the construction of sewers and drainage canals, as in the Drainage Commission case, and the removal of railroad bridge piers encroaching on a public street, as in the Kansas City, Southern & G. Ry. Company case, involved factual circumstances of grave and immediate concern to the safety and health of the general public. Quite another factual proposition is presented in the instant case, for there is no contention whatsoever that the mere presence of plaintiff's pipeline underlying a highway represents a grave danger to the traveling public. The regulation required by defendant did not involve nor necessitate the removal of plaintiff's pipeline on the ground that it constituted a menace or hazard to the public safety. To say that the enforcement of a simple regulatory provision constitutes a proper exercise of the police power of the State would be to extend the right of use of such a potentially dangerous power beyond the limits of reason and the necessities of public purpose.
The case of Panhandle Eastern Pipe Line Co. v. State Highway Commission of Kansas, supra [294 U.S. 613, 55 S.Ct. 566], involved factual circumstances and issues of law in many respects almost identical with those under consideration in the instant case. The opinion of Mr. Justice McReynolds contained the following statements pertinent to the consideration of the asserted exercise of the police power by this defendant.
"A claim that action is being taken under the police power of the state cannot justify disregard of constitutional inhibitions. (citing numerous authorities)
* * * * * *
"The police power of a state, while not susceptible of definition with circumstantial precision, must be exercised within a limited ambit and is subordinate to constitutional limitations. It springs from the obligations of the state to protect its citizens and provide for the safety and good order of society. Under it there is no unrestricted authority to accomplish whatever the public may presently desire. It is the governmental power of self-protection and permits reasonable regulation of rights and property in particulars essential to the preservation of the community from injury. New York & N. E. R. Co. v. Bristol, 151 U.S. 556, 14 S.Ct. 437, 38 L.Ed. 269.
"New Orleans Gaslight Co. v. Drainage Commission, 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831, and similar cases concerning pipes in public streets are not controlling."
There is another factor which distinguishes the facts in the instant case from those under consideration in the cases cited in behalf of defendant. This matter does not concern the regulation of plaintiff's pipeline, to the extent of relocation and protection, across and under an existing state highway, where the right of crossing has been exercised under permission granted by the highway authority. This exact condition applied to that portion of plaintiff's line crossing the original right-of-way of Highway 80, which right of crossing it held by permit from the highway department. Implied in the granting of this permit was the right to require such changes in plaintiff's permissive use as might subsequently become necessary. Accordingly, as is evidenced by the stipulated facts in the instant case, plaintiff complied with defendant's requirements as to that portion of its line which crossed the highway right-of-way under which plaintiff originally laid and constructed the line by permit. In this connection we think it is further appropriate to emphasize the fact that plaintiff's permissive *209 right to construct its pipeline under the then existing highway right-of-way was subordinate to the pre-existing servitude of the defendant. Exactly the converse situation exists with reference to the rights of servitude of the respective parties in the property north of and adjacent to the old right-of-way. On this property plaintiff had acquired a servitude or right-of-way of passage of its pipeline more than twenty years before defendant acquired a servitude or right-of-way of passage for the construction of a highway over the same land. This factual circumstance at once removes the question here involved from any analogy to those cases in which private enterprises have acquired a subsequent, subordinate and permissive easement on, over or under public streets or thoroughfares, and subjects the determination of the question to a resolution of the respective rights of the parties in the exercise of their servitudes.
We are at a loss to understand why defendant has any greater right to take plaintiff's property, represented by its servitude, without compensation, than it would have to take the property of the landowner, necessary for its use as a right-of-way and the attendant construction of a new highway, without compensation.
As a matter of law, the very conveyance by the landowner of a right-of-way to the defendant was subject to the preexisting servitude which had been granted in the same property in favor of plaintiff some 20 years before. Article 749 of the LSA-Civil Code reads as follows:
"He whose estate is incumbered with a servitude, may impose on it other servitudes of any kind, provided they do not affect the rights of him who has acquired the first."
Counsel for defendant calls attention to the fact that the 1935 permit authorizing the crossing of the highway right-of-way was issued under the provisions of Act 95 of 1921 which has been superseded by Act 4 of 1942. Conceding that the 1921 Act is silent with respect to the obligation for cost of altering, relocation or removing facilities located within existing public rights-of-way, counsel, nonetheless, urgently argues that the implied authority of the 1921 Act, as enunciated in the 1942 Act under the provisions now designated as LSA-R.S. 48:381 and 382, requires compliance with regulations of the Louisiana Department of Highways by the utility concerned, at its cost, whether or not the later legislative enactment be considered retroactive in effect.
With the above argument and its conclusion we are in emphatic disagreement for a number of reasons. For the sake of clarity in the discussion of this point we quote the appropriate statutory provisions embodied in Sections 381 and 382 of Title 48 of the LSA-Revised Statutes as follows:
"§ 381. Use and occupancy of highways.
"A. When not inconsistent with the purposes of state highways, the director may issue permits of convenience and necessity for the use and occupancy of the rights of way of state highways as follows:
"(1) For the installation, operation and maintenance of underground pipes, conduits, or cables along or across the highways for the purpose of transporting or conveying fluids, telephone or telegraph messages, gases, or electric current for any purpose.
* * * * * *
"No installation may be made except upon the explicit condition that the owner thereof shall, at no cost to the department, remove or relocate the facility when that is necessary to permit the widening, relocation, or other improvement of the highway, when so ordered by the director."
* * * * * *
"§ 382. Intersection of highways by utilities and facilities.
* * * * * *
"When a highway is constructed across (such) an existing facility or *210 utility, the agency constructing or causing the construction of the highway shall be responsible for the construction of an appropriate and adequate crossing and for its subsequent maintenance."
Conceding arguendo, and only for such purpose, that the appropriate provisions of Act 4 of 1942 as above quoted be considered applicable to the instant case, it appears obvious to us that these provisions conclusively support the claim of this plaintiff and utterly destroy the argument on behalf of defendant. Under the facts of the instant case it is evident that the plaintiff has borne the cost of compliance with defendant's regulations within the right-of-way which its facility crossed under the authority of the 1935 permit from the Louisiana Highway Commission. Further, it is clear that the highway which was constructed on a right-of-way acquired by defendant in 1954 crossed an existing facility and the responsibility for the construction and maintenance of the crossing rests squarely upon the agency "constructing or causing the construction of the highway," under the very words of the above quoted extract from LSA-R.S. 48:382.
In view of the specific statutory provisions of this State we consider the authorities cited from other jurisdictions, by learned counsel for defendant, to be entirely inappropriate. For this reason we pretermit further discussion of such authorities which, in our opinion, are susceptible of distinction from the case before us on other grounds as well.
Counsel's boldly asserted pronouncement that a holding freeing plaintiff from liability for the cost here involved would be equivalent to a pronouncement of unconstitutionality of LSA-R.S. 48:381 is insupportable on any basis of logic, reason or law. To the contrary, we think the effect of allowing recovery by plaintiff constitutes a recognition and enforcement of what we regard as the clear and unequivocally expressed purpose and intent of the statute.
It is argued by distinguished counsel for defendant that the acquisition of the right-of-way did not represent a new work but constituted an extension, enlargement or addition of the already established Highway 80. The acceptance of this contention would lead to what we regard as an absurd conclusion, but, in any event, we think it would have no bearing upon the legal proposition which is here tendered.
In our opinion many of the issues which are presented in the instant case have been conclusively and, as we believe, correctly resolved by the United States Supreme Court in Panhandle Eastern Pipe Line Co. v. State Highway Commission of Kansas, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090, in which case, for all practical purposes, the factual circumstances were identical with those here under consideration.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and
It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Arkansas Louisiana Gas Company, and against the Louisiana Department of Highways in the full sum of $1,535.09, with interest at the rate of 5% per annum from date of October 31, 1955, until paid. Defendant, being an agency of the State, is exempt from payment of any costs.